Sanders, Janet L., J.
This action alleges the wrongful use and dissemination of confidential and proprietary information belonging to the plaintiff Advance Nano Coatings, Inc. (“Nano”). The defendant Joseph Hanafin, a former Nano employee, has already been dismissed from this case. The remaining defendants, Promat UK Limited (“Promat”) and CAFCO International, S.A. (“CAFCO”), are now before the Court moving to dismiss the claims against them. Specifically, they contend that a prior judgment against Nano in a Texas federal court bars Nano from relitigating issues already decided in that earlier lawsuit and that as a result, the Complaint fails to state a claim upon which relief may be granted. See Rule 12(b)(6), Mass.R.Civ.P.[1] This Court agrees, and therefore concludes that the Motion should be Allowed.
*213 BACKGROUND
1. The Complaint
The Complaint sets forth the following allegations, which this Court assumes as true for purposes of this Motion. On November 15, 2005, Hanafin, a chemical engineer and a Massachusetts resident, entered into a five-year employment agreement with Vado A.G., a corporation organized under the laws of Sweden. Vado is the parent corporation of the plaintiff Nano, a Texas corporation. Pursuant to this employment agreement (the “Vado Agreement”), Hanafin was responsible for developing epoxy and water-based fire protective coatings. In return, he was appointed a director of Vado and president of Nano. Hanafin agreed to devote his full professional attention to the affairs of Nano and to assign to its parent Vado all of his intellectual property rights in any formulae, applications or concepts that he created during his employment. Vado later assigned this interest to Nano.
Prior to working for Nano, Hanafin had been employed by Isolatek International, a domestic spinoff of CAFCO, a Luxembourg corporation. Although that employment relationship ended in November 2005 when Hanafin joined Nano, Hanafin subsequently contacted CAFCO and began consulting with it, turning over proprietary information that belonged to Nano and/or Vado in violation of the Vado Agreement. CAFCO was aware that Hanafin was affiliated with Nano and/or Vado. Hanafin on the other hand kept Nano and Vado in the dark about his relationship with CAFCO, even when Nano was itself exploring the possibility of doing business with CAFCO. Hanafin continued to consult and/or exchange proprietary information with CAFCO through 2008.
As result of Hanafin’s misappropriation of Nano/Vado’s trade secrets, CAFCO was able to improve an existing product, WB3, increasing its value and marketability. CAFCO earned millions of dollars in profits from the sale of WB3 applications — the direct result of work Hanafin did for CAFCO when he was subject to the Vado Agreement. When this consulting arrangement was still in effect, CAFCO was purchased by Promat, a limited liability company organized under the laws of England. As a result, Promat assumed and ratified the consulting agreement with Hanafin.
2. The Texas Litigation
On April 24, 2009, about a year before this lawsuit, Nano and Vado sued Hanafin, Promat and another entity, Jotun, in United States District Court in Houston (the “Texas Action”). The facts alleged in support of the complaint in the Texas Action are identical to those contained in the Complaint in the instant case. See Exhibit L to plaintiffs Opposition. The Texas Action asserted three claims against Hanafin: breach of contract, breach of his fiduciary duty to Vado and Nano, and tortious interference with plaintiffs’ prospective business relations. As to Promat, the Texas Action asserted a single count alleging that it tor-tiously interfered with Hanafin’s existing contractual relationship with Vado.
In April 2010, the federal court (Hoyt, J.) dismissed Promat from the case, concluding that its contacts with Texas were insufficient to support the Court’s exercise of personal jurisdiction over it.[2] See Exhibit N to Plaintiffs Opposition. The claims against Jotun were settled. Subsequently, Hanafin (the sole remaining defendant) moved for summary judgment. That motion was allowed on the day that trial was scheduled to begin. A copy of the Texas court’s decision on that motion is attached to the plaintiffs Opposition as Exhibit O.
As to the claim alleging breach of contract, the Texas court concluded that Vado had no standing to assert that claim because it had assigned all of its rights under the Vado Agreement to Nano before the lawsuit began. Because it maintained no personal stake in the claim, Vado could not initiate a lawsuit to enforce it under Texas law. The court went on to state:
Even assuming that Vado has standing, there are other reasons, as well, why Vado is precluded from asserting such a claim. Particularly, Vado is not a proper party to sue for breach of the Vado-Hanafin Agreement [since] it is questionable whether Hugh Scott actually had the authority to act in behalf of Vado in executing [the Vado Agreement].
The Court relied specifically on the testimony of Hugh Scott, who said that he was only acting as “president for the day” when the Vado Agreement was signed and had no interest in Vado, held no position in the company and was not acting under any specific grant of authority. Hence, the court concluded, the Vado Agreement “appears void for lack of authority at the outset.”
With respect to the plaintiffs’ claim alleging a breach of fiduciary duty by Hanafin, the Texas court concluded that the evidence did not show that Hanafin ever served as a director of Vado, so there could be no fiduciary relationship between them. As to Nano, the Court concluded that there was no evidence that Hanafin breached any duty that did exist. Focusing on the testimony of a Nano principal, Craig Scott, the Court stated:
[N]o evidence exists in the record to demonstrate that Hanafin ever shared any proprietary information with Jotun, received any form of payment from Jotun or had a consulting agreement with Promat as the plaintiffs insinuate. Indeed Craig Scott testified that he was not aware of any formulas or other proprietary information Hanafin shared with Jotun, had no evidence that Hanafin ever received any money from Jotun, and had no evidence that Hanafin was ever employed by Jotun. He also stated that he continually accessed Hanafin’s AOL email account from October 19, 2007 through the summer of 2008, without his knowledge and had no evidence that Hanafin ever shared proprietary information with, any third party.
*214 (Emphasis supplied.) Finally, as to the claim against Hanafin for tortious interference with prospective business relations, the Texas judge concluded that the “record is devoid of any evidence” that he intentionally interfered with any probable contract between the plaintiffs and either Promat or Jotun.
The Texas decision is on appeal. Nano initiated the instant action against CAFCO, Hanafin and Promat in order to avoid any argument that its claims are time barred. On July 8, 2011, this Court (Roach, J.) allowed Hanafin’s motion to dismiss the claims against him on the grounds of res judicata or claim preclusion. Even though Nano had alleged arguably new claims against the defendants (a violation of 93A and misappropriation of trade secrets) the Court held that the Texas decision was a final judgment on the merits which barred Nano from litigating claims brought against the same parties that were or could have been brought in the original action. Now, under the related doctrine of issue preclusion, this Court concludes that Nano’s claims against Promat and CAFCO must also be dismissed.
DISCUSSION
Because this Court is considering the preclusive effect of a federal court’s decision, I look to federal law for the definition of issue preclusion, also called collateral es-toppel. Maher v. GSI Lumonic, Inc., 433 F.3d 123, 126 (1st Cir. 2005); see also Whitehall Co., Ltd. v. Barletta, 404 Mass. 497 (1989). Collateral estoppel applies where: “(1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment.” Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 90 (1st Cir. 2007). Unlike the doctrine of res judicata or claim preclusion, collateral estoppel may apply even if the parties in the two actions are not identical, provided that the party against whom estoppel is used had a full and fair opportunity to litigate the issue in the original action. Fiumara v. Fireman’s Fund Inc. Co., 746 F.2d 87, 92 (1st Cir. 1984); see also Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 771 (1st Cir. 2010) (mutuality is no longer required for the application of collateral estoppel in federal courts). Thus, the fact that CAFCO was not a named defendant in the Texas action or that Promat was dismissed from the case without a decision on the merits is irrelevant to the instant motion. Moreover, the doctrine is “no longer limited to ultimate issues: necessaiy intermediate findings can now be used to preclude relitigation.” Biggins v. Hazen Paper Co., 11 F.3d 205, 210 (1st Cir. 1997).
Applying these principles to the instant case, this Court concludes that collateral estoppel does indeed apply to foreclose Nano from litigating certain issues. Two of the four requirements of the doctrine are not in dispute. First, the Texas decision is a final judgment even though an appeal is pending. In re Kane, 254 F.3d 325, 328 (1st Cir. 2001); see also Tausevich v. Board of Appeals, 402 Mass. 146, 148 (1988). Second, Nano had a full and fair opportunity to litigate the issues in the Texas action. The Texas decision was rendered after discovery was complete and trial was set to begin. Thus, Nano had been afforded ample opportunity to develop the facts when the Texas court allowed Hanafin’s motion for summary judgment. Nano argues that the remaining requirements of the doctrine are not satisfied, however, contending that the issues underlying its present lawsuit were not actually decided by the Texas, court nor essential to its judgment. Nano correctly points out that neither CAFCO nor Promat were in the case when judgment entered against Nano in the Texas Action and that the federal court’s decision was focused on the conduct of Hanafin, the only defendant then remaining. But that does not mean that Nano is still able to state a claim against CAFCO and Promat once those issues that were actually decided by the Texas court are removed from the present case.
The instant action asserts four legal claims against CAFCO and Promat: intentional interference with advantageous relations, a violation of Chapter 93A, misappropriation of trade secrets and civil conspiracy. At the heart of those claims is the allegation that Hanafin was bound by the Vado Agreement to devote all his time to developing certain technology for Nano and that, in breach of that agreement as well as his fiduciary obligations, he shared that technology and other confidential information with Promat and others. In the Texas Action, the judge concluded, however, that there was “no evidence that Hanafin ever shared proprietary information with any third party.” As to any contractual obligation on Hanafin’s part, the judge stated that “it is questionable” whether the person who signed the Vado Agreement had any authority to act on behalf of either Vado or Nano, and that consequently the Vado Agreement “appears void for lack of authority at the outset.” If Nano is foreclosed from litigating these two issues, then this Court fails to see how it otherwise states a claim against either Promat or CAFCO.
Nano argues that, with regard to the validity of the Vado Agreement, that was not actually decided but raised only as a possibility in the event that an appeals court disagreed with the federal district court’s conclusion that Vado lacked standing to enforce it. Certainly, the Texas decision is not the model of clarity, its choice of words serving only to obscure its reasoning rather than to illuminate it. But without the conclusion regarding the validity of the Vado Agreement, there was no basis for the Texas judge to throw out Nano’s claim for breach of contact. Nano did not have the same problem as to standing that Vado had. If there was no valid contract to begin with, however, Nano had no reasonable expectation of proving its contract claim.
More significant in this Court’s view is the Texas judge’s conclusion that Hanafin did not share any confidential or proprietary information with anyone. Nano seeks to minimize the importance of that conclusion by *215 contending that it was limited to the sharing of information with another defendant named in that case, Jotun. Although the Texas judge did focus initially on Jotun (no longer a defendant before the court at the time), the court did not limit its conclusion to Jotun— nor could it if it were to dispose of Nano’s claim against Hanafin for breach of his fiduciary duty. Like the Complaint in the instant case, the federal complaint specifically alleged that Hanafin exchanged proprietary information not just with Jotun but also with Promat. Essential to its ruling that Hanafin did not breach any fiduciary obligation was the Texas court’s broader conclusion that there was no evidence he shared confidential information “with any third party.’’ See Sealfon v. United States, 332 U.S. 298, 575, 580 (1948) (holding that the nonexistence of a fact may be established by a judgment no less than its existence, such that a party may be precluded under collateral estoppel from attempting a second time to prove a fact that he sought unsuccessfully to prove n a prior action); see also Wright & Miller, Federal Practice and Procedure, §4419 (2nd ed.).
If Nano is foreclosed from litigating that larger issue, then the Complaint simply does not comply with the heightened standard of review that this Court is to apply in determining whether it satisfies the requirements of Rule 12(b)(6). Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008) (factual allegations must be specific enough to suggest — not merely to be consistent with — an entitlement to relief rising “above the speculative level”). Thus, Nano cannot state a claim against CAFCO/Promat for misappropriating trade secrets if it is foreclosed from showing that Hanafin shared such secrets with them. As to the claim of intentional interference of contractual relations, that requires proof among other things that the defendant acted with an improper purpose or used improper means. See United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 813-16 (1990). That the defendants were aware Hanafin had some business relationship with Nano and paid him to do work for them is not in and of itself actionable without the additional wrong that confidential information of the plaintiff was stolen as a result. For similar reasons, Nano does not state a claim of conspiracy when the co-conspirator (Hanafin) has already been found to have committed no tort to begin with. Nor is there any basis for a 93A action where the conduct constituting the unfair and deceptive practice is nothing more than a reiteration of the common-law claims alleged in the Complaint.
CONCLUSION AND ORDER
For all the foregoing reasons, as well as other reasons set forth in the Defendants’ Memoranda, their Motion to Dismiss is ALLOWED and it is hereby ORDERED that what remains of the Complaint be DISMISSED with prejudice.

The defendants also moved to dismiss on the grounds that this Court lacked personal j uiisdiction over them. In light of this Court’s decision to dismiss on the grounds of issue preclusion, I need not address the jurisdictional issue.

In so doing, the Texas court noted that Hanafin was a Massachusetts resident who performed all the consulting work at issue in the case from his Marlborough home. This together with the fact that the defendants knew where Hanafin lived and sent payments for his work to his Massachusetts address would tend to support the plaintiffs’ claim that this Court has personal jurisdiction over Promat and CAFCO here in Massachusetts. But see footnote 1, supra.